**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1248

VA TIMBERLINE, L.L.C.,

       Plaintiff - Appellant,

   v.

APPALACHIAN POWER COMPANY; FRANKLIN REAL ESTATE COMPANY,

       Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Senior District Judge. (7:06-cv-40026-jct-bwc)

Submitted: August 20, 2009      Decided: August 31, 2009

Before TRAXLER, Chief Judge, and GREGORY and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James F. Watson, Pavlina B. Dirom, CASKIE & FROST, Lynchburg, Virginia, for Appellant. Frank K. Friedman, William B. Poff, Matthew P.W. Pritts, WOODS ROGERS, PLC, Roanoke, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

VA Timberline, L.L.C. ("Timberline") appeals from the district court's order granting summary judgment in favor of the Defendants, Appalachian Power Company ("APCO") and Franklin Real Estate Company ("Franklin"). Finding no error, we affirm.

The uncontested facts are as follows: APCO operates the Smith Mountain Hydroelectric Project under a license issued to APCO in 1960 by the Federal Power Commission, now the Federal Energy Regulatory Commission ("FERC"). The boundary of the project at Leesville Lake reaches 620 feet above mean sea level ("fmsl"). The FERC license requires APCO to obtain and retain title to the project lands in fee or retain rights to the lands sufficient to operate the project.

APCO originally obtained rights to the land at issue in 1962 pursuant to an easement in which it obtained the right to flood the land below the 620 fmsl contour line and the right to enter upon the premises "at any time and from time to time and, at [APCO's] discretion, to cut, burn, and/or remove therefrom any and all buildings, structures . . . and other objects . . . below the contour the elevation of which is 620 feet." At that time, the original owner transferred the property above and below the contour line by deed to Franklin. The transfer of ownership was explicitly made subject to APCO's rights under its easement.

2

Franklin transferred ownership of the property above the contour line to a third party and in the deed granted an express easement allowing the construction and maintenance of boat docking and mooring facilities below the contour line. The easement was expressly made subject to "the terms and conditions of that certain license issued by the Federal Power Commission to [APCO] under date of April 25, 1960, and any amendments thereof or supplements thereto, authorizing the construction, operation and maintenance of [APCO]'s hydro electric development known as the Smith Mountain Combination Project." In addition, APCO joined the deed for the purpose of quitclaiming its rights to remove, in its discretion, any and all structures located below the 620 fmsl contour line. The easement granted in the deed stated that APCO's consent, i.e. APCO's release of its rights, also was subject to the terms and conditions of its FERC license. Subsequently, Timberline obtained ownership of the land above the contour line transferred by Franklin in this deed.

In 1998, FERC delegated to APCO the authority to grant permission for certain uses of project lands, including the construction of residential boat docks without first obtaining FERC approval. In 2005, FERC approved a Shoreline Management Plan ("SMP") submitted by APCO that divided the shoreline in the project boundaries into designated zones and detailed what

construction would be permissible in each zone. In its order approving the SMP, FERC incorporated the plan into APCO's license.

In March of 2005, Timberline applied to APCO for permission to build boat docks on the land below the contour line, owned by Franklin and on which Timberline had an easement allowing for the construction of docks. APCO denied permission because Timberline's proposed construction was inconsistent with the SMP. Timberline then filed an action seeking a declaratory judgment construing the rights under the deeds in the parties' chains of title and under APCO's federal license. See Appalachian Power Co., 112 FERC ¶ 61,026 (FERC 2005).

After both parties moved for summary judgment, the district court granted summary judgment in favor of the Defendants, concluding that APCO's release of its rights under its easement was expressly subject to the terms and conditions of its federal license and, therefore, that APCO had retained sufficient rights to maintain control over the project lands through its license.

On appeal, Timberline contends that APCO does not have the authority to regulate the proposed construction because APCO failed to retain sufficient property rights to control the project lands when APCO quitclaimed its rights to remove any and all structures below the contour line. We disagree.

4

We review de novo a district court's order granting summary judgment. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). Under the Federal Power Act, FERC has the power to issue licenses to private parties to construct and operate dams and similar projects. See 16 U.S.C.A. § 797(e) (West 2000 & West Supp. 2009). Furthermore, FERC may delegate its responsibility to ensure that the uses of the project lands are consistent with the public interest to the licensees. See Union Electric Co., d/b/a AmerenUE, 90 FERC ¶ 61,249, at *61833 (FERC 2000). Here, FERC delegated the regulation of the project lands at issue to APCO in 1998 and further delegated its responsibilities to APCO when FERC adopted the SMP.

However, FERC's authority to regulate through the licensee is also conditioned upon the licensee obtaining and maintaining sufficient property rights over the project lands to be able to accomplish these goals. See id. at *61833, n.5 (noting that FERC requires all licensees to acquire and retain all necessary ownership of or rights to project property, through standard Article 5 of each license); see also Appalachian Power Co., 112 FERC ¶ 61,026, at *61,189 (APCO's license requires APCO to retain "all interests in non-federal land and other property necessary or appropriate to carry out project purposes"). Here, APCO retained sufficient property

5

rights over the project lands. The deed in which APCO quitclaimed its right to remove any and all boat docking from the land below the contour line made clear that APCO's release of its rights was subject to the terms of its federal license. Therefore, APCO's release of its rights was limited by its responsibility under its federal license to retain sufficient property rights in the project lands to be able to regulate the uses of the lands. The quitclaim, therefore, merely clarified that the construction of some structures on the land was permissible, to the extent such construction was consistent with APCO's federal license.[*]

Accordingly, we affirm the district court's grant of summary judgment for the Defendants. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[*] Since we conclude that APCO did retain sufficient property rights to manage the project, we need not reach the question of whether APCO's flowage easement alone is a sufficient property interest to regulate the land.