**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2348**

RICHARD A. PRESSL; THERESA PRESSL,

Plaintiffs - Appellants,

v.

APPALACHIAN POWER COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Norman K. Moon, Senior District Judge. (7:15-cv-00343-NKM-RSB)

Argued: October 26, 2016            Decided: November 21, 2016

Before MOTZ, TRAXLER, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Floyd joined.

**ARGUED:** James Frederick Watson, CASKIE & FROST, P.C., Lynchburg, Virginia, for Appellants. Frank Kenneth Friedman, Matthew Patrick Warren Pritts, WOODS ROGERS, PLC, Roanoke, Virginia, for Appellee. **ON BRIEF:** Pavlina B. Dirom, CASKIE & FROST, P.C., Lynchburg, Virginia, for Appellants. C. Carter Lee, WOODS ROGERS, PLC, Roanoke, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Landowners brought this action in state court seeking a declaration of their rights to build a dock on property subject to a flowage easement. After the power company, which owns the easement, removed the case to federal court, the landowners sought to remand the case to state court. The district court denied the motion to remand and then dismissed the landowners' complaint. Because the district court lacked subject matter jurisdiction, we must vacate and remand.

I.

Richard A. Pressl and Theresa Pressl own property adjacent to Smith Mountain Lake in Franklin County, Virginia. They own about two and a half acres of land sitting more than 800 feet above median sea level. The Pressls also own half an acre of adjoining land below the 800-foot elevation contour. They acquired the property subject to a flowage easement that the Pressls' predecessors in interest granted in 1960 to Appalachian Power Company ("APCO").

The flowage easement recites APCO's intention to construct a dam and operate a hydroelectric power station at Smith Mountain. It provides that the elevation of the impounded waters the dam creates generally would not exceed 800 feet. The easement grants APCO the right to:

2

overflow and/or affect so much of said premises as may be overflowed and/or affected, continuously or from time to time in any manner whatsoever, as the result of the construction, existence, operation and/or maintenance of the aforesaid dam and/or power station, the impounding of the waters of [Roanoke] river and tributaries and/or the varying of the level of the so impounded waters by reason of the operation of said power station, including any pumping as part of such operation.

The easement also gives APCO the right to:

enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet.

The easement provides that the landowners retain the right to "possess and use said premises in any manner not inconsistent with" APCO's flowage easement, including crossing the land for recreational purposes.

After acquiring the property, the Pressls sought to construct a dock below the 800-foot elevation contour. APCO advised the Pressls that, as a condition for building the dock, they had to execute an Occupancy and Use Permit and agree to abide by its restrictions.

Balking at this requirement, the Pressls filed suit in Virginia state court, seeking a declaratory judgment that APCO's demands violated the flowage easement. The complaint asks the court to declare "that APCO has no regulatory authority over the

3

plaintiffs' property which lies below the 800 foot contour beyond those rights defined by the flowage easement, the contemporaneous expressions of the parties, and vested rights to build and own structures to access Smith Mountain Lake for recreational purposes."  It further requests the court to hold that the Pressls "be allowed to use their property in any manner not inconsistent with the maintenance of a dam and hydro-electric power generation plant operated by APCO at Smith Mountain."

APCO removed the case to the United States District Court for the Western District of Virginia.  APCO asserted that the federal district court had subject matter jurisdiction because the Pressls' property lies within the project boundary for APCO's Smith Mountain hydroelectric project, which APCO operates under a license issued by the Federal Energy Regulatory Commission ("FERC").

The district court agreed.  It concluded that it had jurisdiction under both 28 U.S.C. § 1331 and 16 U.S.C. § 825p. The court then granted APCO's motion to dismiss, analyzing the easement under Virginia law.  The court held that the plain language of the flowage easement gave APCO the right to remove any dock built below the 800-foot elevation contour and that APCO's exercise of that right would be in furtherance of the original purpose of the easement -- to allow APCO to operate its

4

hydroelectric project. The district court also held that the Pressls needed to raise any complaints about APCO's actions with FERC prior to filing suit. The Pressls timely noted this appeal.

Before us, the Pressls renew their argument that the federal district court lacked subject matter jurisdiction.[1] We review questions as to subject matter jurisdiction de novo. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 815-16 (4th Cir. 2004) (en banc). The party seeking to remove a case to federal court has the burden of demonstrating federal jurisdiction. Id. at 816. "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). APCO argues that jurisdiction lies under 18 U.S.C. § 1331 and 16 U.S.C. § 825p. We consider each statute in turn.

II.

To determine whether a case "arises under" federal law for the purposes of establishing federal question jurisdiction under 28 U.S.C. § 1331, we follow the well-pleaded complaint rule. Jurisdiction exists "only when a federal question is presented

---

[1] The Pressls also challenge the district court's dismissal of their complaint on the merits. Because we hold that the court did not have subject matter jurisdiction, we do not reach that contention.

5

on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). It is not enough that there may be a defense grounded in federal law or that the complaint anticipates and rebuts such a defense. Id. at 392-93.

In an action for declaratory judgment, however, "the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001). Under this "coercive action doctrine," although the declaratory judgment plaintiff does not assert a claim arising under federal law, federal question jurisdiction exists if "the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Id. See generally 13D Charles Alan Wright, et al., Federal Practice and Procedure § 3566 (3d ed.), Westlaw (database updated April 2016).

In this case, the Pressls seek a declaratory judgment that APCO does not possess rights under the flowage easement to prevent or regulate construction of a dock on their property. APCO maintains that federal question jurisdiction lies because its hypothetical coercive suit, seeking a declaration as to its rights to prevent or regulate construction or an injunction to enforce those rights, would arise under federal law.

6

"[T]he vast majority" of cases arising under federal law "are those in which federal law creates the cause of action." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). Cases may also arise under federal law, however, when "the vindication of a right under state law necessarily turn[s] on some construction of federal law." Id. (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 9 (1983)).

APCO admits that neither the Pressls' complaint nor APCO's hypothetical coercive suit alleges a federal cause of action. APCO contends that federal jurisdiction nonetheless exists because its rights under state law necessarily turn on the construction of its federal license. For a federal court to have jurisdiction in these circumstances, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312-14 (2005). Federal jurisdiction will lie only if a case meets all four requirements. Gunn, 133 S. Ct. at 1065.

### A.

### i.

We first address whether this case necessarily raises a federal question. APCO emphasizes that the property subject to

7

the flowage easement lies within the project boundary for the Smith Mountain Hydroelectric Project that APCO operates. FERC imposes certain duties on APCO for managing development and construction within the project boundary -- including managing the construction of docks. APCO argues that the Pressls' complaint necessarily raises federal issues because it seeks a declaration that APCO does not have authority to regulate construction of a dock. According to APCO, a court must examine APCO's authority under its federal license to adjudicate the issue. Appellee Br. at 13-15, 20-21, 25-26.

In proffering this argument, APCO misreads the Pressls' complaint. The Pressls do not challenge APCO's substantial duties to FERC. Nor do they dispute the extent of APCO's authority over the property in the event the flowage easement provides APCO with sufficient property rights.

The Pressls maintain only that APCO has not acquired the property right to constrain the Pressls' construction of a dock. Because neither the Federal Power Act nor APCO's FERC license provides APCO with the property rights necessary to operate the hydroelectric project, see, e.g., Appalachian Power Co., 153 FERC ¶ 61299, at ¶ 29 (Dec. 17, 2015), APCO must acquire these rights either through condemnation or contract. APCO has not (yet) condemned any of the Pressls' land, and the Pressls maintain that the contract provision at issue here -- the

8

flowage easement -- does not provide APCO with sufficient property rights. In accord with this theory, the Pressls' complaint asserts that the "controversy between the parties regard[s] the rights granted . . . pursuant to the . . . flowage easement" and "aver[s] that the flowage easement does not give APCO the right to regulate any use which [the Pressls] may make of their property." This controversy does not necessarily raise a federal question.

ii.

Alternatively, APCO maintains that a federal question necessarily arises in interpreting the scope of the flowage easement. It argues that its right to prevent the Pressls from building a dock derives from two easement provisions: the provision allowing APCO to "overflow and/or affect" the property "by reason of the operation of [the Smith Mountain] power station" and the provision allowing APCO to remove "any and all . . . structures." APCO asserts that, under Virginia law, a reasonableness inquiry based on the original purpose of the easement limits these broad powers. Because the purpose of the easement was to allow it to construct and operate a dam and power station, APCO contends that a court must interpret its FERC license to determine the reasonable limit of its rights under the easement. Appellee Br. at 21-22.

9

But a claim "necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182 (4th Cir. 2014)(quoting Dixon, 369 F.3d at 816). Accordingly, if even one theory for interpreting the flowage easement does not involve interpretation of federal law, the claim does not "arise under" federal law. Dixon, 369 F.3d at 817.

Because of this requirement, we have rejected a similar contention that interpretation of an easement necessarily depends on a question of federal law. See Columbia Gas Transmission Corp. v. Drain, 191 F.3d 552, 559 (4th Cir. 1999). There, a company regulated by FERC under the Natural Gas Act brought an action in federal court to enforce an easement for operation of a gas line. Id. at 554. Because the easement did not explicitly specify the width of the right of way, the court needed to determine what width was "reasonably necessary" under state law. Id. at 557. We explained that the determination of that question is often reached without reference to federal law or regulations. Id. at 558. Accordingly, we held that the state law easement claim did not necessarily raise issues of federal law. Id. at 559; see also Columbia Gas Transmission, LLC v. Singh, 707 F.3d 583, 589-90 (6th Cir. 2013)(holding that interpretation of an easement owned by an entity subject to FERC

10

regulation did not necessarily raise a federal question because the obligation created by the federal regulation was just one of many factors considered in the state law inquiry).[2]

The same analysis applies in this case. Under Virginia law, the most important factor in interpreting an easement is the language of the easement itself. Pyramid Dev., L.L.C. v. D&J Assocs., 553 S.E.2d 725, 728 (Va. 2001) ("[W]hen the language of a deed is 'clear, unambiguous, and explicit,' a court interpreting it 'should look no further than the four corners of the instrument under review.'" (quoting Langman v. Alumni Ass'n of Univ. of Virginia, 442 S.E.2d 669, 674 (Va. 1994)). Indeed, in holding that the easement at issue here gave APCO the right to remove any structure below the 800-foot elevation contour, the district court relied primarily on the easement's text. It did not need to analyze the meaning of APCO's license to determine the reasonable limits of the easement. The court simply noted that the original purpose of

_____

[2] VA Timberline, L.L.C. v. Appalachian Power Co., 343 F. App'x 915 (4th Cir. 2009) (per curiam), an unpublished opinion on which APCO relies, offers the company little assistance. There we upheld the grant of summary judgment to APCO on a claim involving an easement owner's right to build a dock. But the conveyances at issue in Timberline were explicitly made subject to APCO's FERC license "and any amendments thereof or supplements thereto." Id. at 916. Because the plaintiff's easement only gave it the right to construct docks that complied with APCO's license, interpreting the license was necessary to resolve the case.

11

the easement was to allow APCO to operate a hydroelectric project regulated by FERC. Such tangential reference to federal law does not suffice to create "arising under" jurisdiction.

In sum, this case does not necessarily raise any federal issue.

## B.

Moreover, no federal question in this case is actually disputed. There is no dispute over the validity of APCO's federal license. Nor is there any dispute as to APCO's obligations to FERC. The Pressls challenge only whether the flowage easement by its terms allows APCO to prevent them from building a dock. This seems a simple enough dispute, which the district court may well have properly resolved -- had it arisen under federal law. But, of course, it did not. Rather, this case presents solely a dispute as to state property law.

## C.

Finally, we believe that any federal interest in interpreting the flowage easement is not substantial and that asserting federal jurisdiction over cases like this would disrupt the congressionally approved federal-state balance. State courts are just as able (perhaps more able) to interpret and enforce the property rights conveyed through instruments governed by state law.

12

Undoubtedly, there is a federal interest in ensuring the effective operation of hydroelectric projects. But resolving property disputes in state court does not undermine that interest. After all, if a state court ultimately holds that APCO did not acquire all of the property rights it needs to operate the project in compliance with its license, APCO can obtain those rights through contract or through eminent domain. 16 U.S.C. § 814. Thus, a ruling against APCO in this case could not substantially affect federal interests. The interpretation of a state conveyance is a quintessential question of state property law, and Congress has limited our jurisdiction over such cases. Accordingly, we conclude that 28 U.S.C. § 1331 provides no basis for federal jurisdiction over this case.

## III.

Finally, we turn to the question of whether the exclusive jurisdiction provision in the Federal Power Act, 16 U.S.C. § 825p, provides a basis for jurisdiction. Section 825p grants federal district courts exclusive jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the Federal Power Act] or any rule, regulation, or order thereunder." 16 U.S.C. § 825p.

13

Neither the Pressls' suit seeking to define the scope of the flowage easement nor APCO's hypothetical coercive action would be brought to "enjoin any violation of" the Federal Power Act. As discussed above, the Pressls seek only to determine APCO's property rights. They do not allege that APCO violated its license or its duties to FERC. And, since FERC regulates only APCO, the Pressls themselves could not violate the Federal Power Act by constructing a dock.

APCO nevertheless maintains that § 825p provides a basis for federal jurisdiction here. APCO notes that it has a duty under the Federal Power Act to manage property within the project boundary in compliance with its license. The company contends that its hypothetical suit seeking a declaratory judgment that APCO has sufficient property rights to meet its federal obligations -- or a suit to enjoin the Pressls from constructing a dock -- would thus be "brought to enforce [a] liability or duty created by" the Federal Power Act. The Supreme Court's recent decision in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S. Ct. 1562 (2016), dooms this argument.

In Merrill Lynch, the Court interpreted the nearly identical "brought to enforce" language in the exclusive jurisdiction provision of § 27 of the Securities Exchange Act of 1934. The Court held that the jurisdictional test established

14

by § 27 of the Exchange Act is the "same as the one used to decide if a case 'arises under' a federal law" under 28 U.S.C. § 1331. Id. at 1566. In doing so, the Court rejected the argument that the "brought to enforce" language provides broad jurisdiction over complaints that simply mention a duty established by the federal law. Id. at 1568-69. Rather, claims are "brought to enforce" such a duty only if their "very success depends on giving effect to a federal requirement." Id. at 1570. The Court further explained that this interpretation of the "brought to enforce" language best comports with its precedents, preserves the balance between federal and state courts, and provides a judicially administrable rule. Id. at 1567-68; see also Pan Am. Petroleum Corp. v. Superior Court of Del. In & For New Castle Cty., 366 U.S. 656, 664 (1961).

Of particular import here, the Merrill Lynch Court expressly noted that the "brought to enforce" language in the statute before it -- § 27 of the Exchange Act -- was materially indistinguishable from § 825p in the Federal Power Act, the statute on which APCO relies. The Supreme Court specifically identified § 825p as a provision with "[m]uch the same wording" as § 27 of the Exchange Act and suggested that the two provisions should be interpreted in the same way. See Merrill Lynch, 136 S. Ct. at 1568 & n.3, 1572, 1575.

15

Because we have held that this case does not "arise under" federal law for purposes of federal question jurisdiction under 28 U.S.C. § 1331, we must also hold that there is no basis for exclusive jurisdiction under 16 U.S.C. § 825p.

## IV.

For the foregoing reasons, we vacate the judgment of the district court and remand the case.

<u>VACATED AND REMANDED</u>